IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SOUTHERN GLAZER'S WINE AND SPIRITS, LLC, | CIV. NO. 17-00407 JMS-RLP |
| Petitioner, | ORDER GRANTING PETITION TO COMPEL ARBITRATION |
| vs. | |
| JANET DENYER, | |
| Respondent. | |

## ORDER GRANTING PETITION TO COMPEL ARBITRATION

## I.  INTRODUCTION

Before the court is Petitioner Southern Glazer's Wine and Spirits,

LLC's ("SGWS" or "Petitioner") Petition to Compel Arbitration of Respondent

Janet Denyer's ("Denyer") claims arising from the termination of her employment

with Petitioner.  ECF No. 2.  For the reasons discussed below, the Petition to

Compel Arbitration is GRANTED.

## II.  BACKGROUND

Denyer began working for Southern Wine & Spirits of America, Inc.

("SWSA")[1] on or about March 7, 2016.  Denyer Decl. ¶ 8; Kauther Decl. ¶ 3.  That

---

[1] As analyzed below, SGWS is the successor corporation to SWSA, following a merger on or about June 30, 2016.  Declaration of Janet Denyer ¶ 8, ECF No. 14-1; Declaration of Jamie Kauther ¶ 3, ECF No. 15-1.

same day, as part of her "onboarding" process, Denyer signed a "Notice to Prospective Employees" ("Notice"), ECF No. 15-2, and a "Mutual Agreement to Arbitrate Claims" ("Agreement"), ECF No. 2-5. *See* Declaration of Lauren Mutti, ECF No. 2-2 ¶ 12; Kauther Decl. ¶ 9.

By signing the Notice, Denyer agreed "to be bound by . . . arbitration procedures for employer-employee disputes," including but not limited to "claims, demands or actions" for violation of any federal, state or local law "regarding . . . the termination of employment[.]" Notice at 1. The Notice specified the use of the American Arbitration Association arbitration procedures, "as modified and expanded by the SOUTHERN Employment Arbitration Policy [("Policy")]," *id.*, and advised Denyer that,

> . . . it is your responsibility to read and understand the arbitration procedures, and your agreement to be bound by those procedures is a condition of employment.
>
> . . . .
>
> . . . We therefore ask that you read the attached Employment Arbitration Policy and then sign and return the attached [Agreement] in order to signify both your acceptance of our offer of employment and your agreement to the above.
>
> By signing below, you are attesting that you have read and understood this document, and are knowingly and voluntarily agreeing to its terms.

*Id.* at 1-2.

2

Under the Agreement, Denyer agreed to arbitrate all disputes arising from her employment or termination from employment, as well as disputes with Petitioner that are unrelated to her employment.  *See* Agreement at 1.  More specifically, the Agreement provides:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present, or future, whether or not arising out of my employment, or its termination, that the Company may have against me or that I may have against the Company or against its officers, directors, employees or agents in  their capacity as such or otherwise.  The claims covered by this Agreement include – ***but are not limited to*** – claims for breach of any contract or covenant (express or implied); tort claims; claims of discrimination and harassment . . . and any other federal, state or local statute, regulation, ordinance or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment; claims for wages, benefits or other compensation due; and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance or common law doctrine[.]"
>
> . . . I knowingly and willingly forego my statutory and common law remedies, whether state or federal, whether explicitly mentioned in this Agreement or not, in favor of submitting any disputes with the Company to arbitration.  Except as otherwise provided in this Agreement or by law, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action . . . in any way related to any claim covered by this Agreement.
>
> . . . .

I understand that any reference in the Agreement
to the Company will also refer to all subsidiary and
affiliated entities, agents, and all successors and assigns
of any of them.

*Id.* at 1-2.

And on the signature page (page 4), the Agreement provides:

**I ACKNOWLEDGE THAT I HAVE CAREFULLY
READ THIS AGREEMENT (AND THE POLICY
INCORPORATED HEREIN) AND THAT I
UNDERSTAND AND AGREE TO BE BOUND BY
ITS TERMS. . . .**

**I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I
AM GIVING UP MY RIGHT TO A JURY TRIAL IN REGARD
TO THE TYPES OF CLAIMS COVERED BY THIS
AGREEMENT. . . .**

**I FURTHER ACKNOWLEDGE AND UNDERSTAND THAT
PURSUANT TO THIS AGREEMENT, ARBITRATION OF
DISPUTES COVERED BY THIS AGREEMENT IS
MANDATORY AND BINDING.**

**I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN
THE OPPORTUNITY TO DISCUSS THIS AGREEMENT
WITH MY PRIVATE LEGAL COUNSEL AND HAVE
AVAILED MYSELF OF THAT OPPORTUNITY TO THE
EXTENT I WISH TO DO SO.**

*Id.* at 4.

Notwithstanding the above, Denyer now asserts that she was unaware

"of the existence of the arbitration agreement" because at the time she signed the

Agreement, she had not received a copy of the Policy, or the first three pages of the Agreement. ECF No. 14 at 2-3; Denyer Decl. ¶¶ 3, 4, 7, 9.

In response to Denyer's assertion, SGWS provided the declaration of Jamie Kauther ("Kauther"), Senior Director, Labor and Employment Counsel for SGWS. Kauther states that she is familiar with the "business operations and employment policies and practices of both [SGWS and SWSA including] . . . the record-keeping practices of [SWSA] for employee personnel files." Kauther Decl. ¶¶ 3, 4. She further states that SWSA's "uniform policy and practice" was to provide copies of the Notice, Policy, and Agreement to new employees on their first day of work, and that after review and signature, the documents were "immediately stored and maintained in employee personnel files, copies of which were created and continue to be maintained in the normal course and scope of business." *Id.* ¶ 5. Kauther has regular access to SWSA's personnel files, including Denyer's. *Id.* ¶¶ 6-7. And she states that her review of Denyer's file, which contains the Notice, four-page Agreement, and Policy, shows that Denyer received a complete copy of each document and that she signed the Notice and Agreement on March 7, 2016. *Id.* ¶¶ 8, 9.

Denyer's employment with SGWS ended on or about April 11, 2017, when she was allegedly wrongfully terminated. ECF No. 2-4 ¶ 5. On June 15, 2017, Denyer's counsel sent SGWS a demand letter and a draft of a Complaint

alleging claims of whistleblower retaliation; violation of wage and hour laws; hostile work environment; constructive termination; interference with compensation, terms, conditions, and privileges of employment; conspiracy, fraud, and retaliation in violation of employment laws; intentional interference with the economic advantages of employment; and intentional and negligent infliction of emotional distress. Pet. at 5, 11, ECF No. 2-1; Compl. ¶¶ 11-20, ECF No. 2-4.

SGWS filed the instant Petition to Compel Arbitration ("Petition") on August 16, 2017. ECF No. 2. On November 15, 2017, Denyer filed an Opposition, ECF No. 14, and Petitioner filed a Reply on November 27, 2017, ECF No. 15. A hearing was held on December 11, 2017.

## III. <u>STANDARD OF REVIEW</u>

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, which applies to arbitration agreements in contracts involving transactions in interstate commerce, provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2; *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) ("With limited exceptions, the [FAA] governs the enforceability of arbitration agreements in contracts involving interstate commerce."). Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at

hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Nevertheless, "the federal policy in favor of arbitration does not extend to deciding questions of arbitrability," that is, the question "who decides whether a claim is arbitrable." *Oracle Am., Inc. v Myriad Group A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (emphasis omitted).

In determining whether to compel arbitration, a district court may not review the merits of the dispute; rather, "the court must determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) (quotation and citation omitted). "If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)); *see also Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) ("Because arbitration is fundamentally a matter of contract, the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms.") (quotation marks and citations omitted).

To determine whether a valid agreement to arbitrate exists, a district court must apply "ordinary state-law principles that govern the formation of

contracts." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[A]greements to arbitrate [may] be invalidated by generally applicable [state-law] contract defenses" to enforceability such as "fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2001); *see Lowden*, 512 F.3d at 1217 ("[Determining] whether . . . a valid agreement to arbitrate exists . . . requires [a court] to consider what is unconscionable and unenforceable under . . . state law."). "The party seeking to compel arbitration carries the initial burden of establishing that an arbitration agreement exists," and if met, the burden then "shifts to the opposing party to present evidence on its defenses to the arbitration agreement." *Siopes v. Kaiser Found. Health Plan, Inc.*, 130 Haw. 437, 446, 312 P.3d 869, 878 (2013).

## IV. <u>DISCUSSION</u>

Denyer argues that there is no valid arbitration agreement because (1) she did not agree to arbitrate her claims, and (2) there was no consideration for the waiver of her right to a jury trial. She also argues that the arbitration agreement is unenforceable because (1) she was hired by SWSA, not SGWS, and therefore SGWS cannot compel arbitration, (2) she did not receive the Policy and pages 1-3 of the Agreement when she signed page 4 of the Agreement, and (3) she cannot afford to travel to the mainland to participate in arbitration. *See* Opp'n ¶¶ 1-5;

Denyer Decl. ¶¶ 3-5, 7, 9.  Denyer does not dispute that the arbitration agreement (if otherwise valid) encompasses her claims.

## A.     The Existence of a Valid Arbitration Agreement

Under Hawaii law, a valid arbitration agreement must have the following three elements:  "(1) it must be in writing; (2) it must be unambiguous as to the intent to submit disputes or controversies to arbitration; and (3) there must be bilateral consideration."  *Id.* at 447, 312 P.3d at 879 (quoting *Douglass v. Pflueger Hawaii, Inc.*, 110 Haw. 520, 531, 135 P.3d 129, 140 (2006)).

### 1.     Written Arbitration Agreement

The parties do not dispute that the arbitration agreement is in writing. The record reflects that Denyer signed paper copies of both the Notice and the Agreement.  *See* Notice at 2; Agreement at 4; Denyer Decl. ¶ 3 (verifying that she signed page 4 of the Agreement).  And during the hearing, Denyer conceded that she signed both documents.  Thus, the first element is met.

### 2.     Unambiguous Intent to Submit to Arbitration

For the second element, "there must be a mutual assent or a meeting of the minds on all essential elements or terms to create a binding contract." *Siopes*, 130 Haw. at 447, 312 P.3d at 879 (citation and emphasis omitted).  "The existence of mutual assent or intent to accept is determined by an objective standard."  *Douglass*, 110 Haw. at 531, 135 P.3d at 140.

9

Here, Denyer argues that she was unaware of the existence of the arbitration agreement because neither the Policy nor pages 1-3 of the Agreement were provided to her when she signed page 4 of the Agreement, and therefore she never agreed to arbitration.  Opp'n at 2.

To establish mutual assent, SGWS provides Kauther's declaration that SWSA had a "uniform policy and practice to provide copies of these documents to employees on their first day of employment" and that after reviewing the documents, they "were then immediately stored and maintained in employee personnel files, copies of which were created and continue to be maintained in the normal course and scope of business."  Kauther Decl. ¶ 5.  Kauther further states that Denyer's personnel file contains copies of the Policy, the signed Notice, and the signed 4-page Agreement.  *Id.* ¶¶ 7-9.  Thus, Kauther states that "at or near the time of the beginning of [Denyer's] employment, [she] was provided with a copy of [these three documents]."  *Id.* ¶ 7.

SGWS further argues that the documents themselves demonstrate Denyer's intent to arbitrate claims.  The Notice expressly states that "you and we agree that any employment dispute . . . will be submitted to binding arbitration," and that "[b]y signing below, you are attesting that you have read and understood this document, and are knowingly and voluntarily agreeing to its terms."  Notice at 1, 2.  And page 4 of the Agreement expressly provides that by signing the

Agreement, Denyer "ACKNOWLEDGE[S] AND UNDERSTAND[S] THAT PURSUANT TO THIS AGREEMENT, ARBITRATION OF DISPUTES . . . IS MANDATORY AND BINDING," and that she is "GIVING UP" her "RIGHT TO A JURY TRIAL." Agreement at 4.

Hawaii courts have found that similar language "reflected mutual assent on its face." *Siopes*, 130 Haw. at 451, 312 P.3d at 883 (quotation marks omitted) (citing *Douglass*, 110 Haw. at 532, 135 P.3d at 141 and *Brown v. KFC Nat'l Mgmt. Co.*, 82 Haw. 226, 240, 921 P.2d 146, 160 (1996)). Nevertheless, before ruling on the issue of mutual assent, Hawaii courts also consider the surrounding circumstances. *Id.* In *Douglass*, the arbitration provision at issue consisted of two paragraphs hidden on page 20 of a 60-page employee handbook, the signed acknowledgement form at the end of the handbook did not mention the arbitration provision, immediately preceding the acknowledgement form was a disclaimer section indicating in bold text that the policies are guidelines and do not create a contract, and the acknowledgement form itself stated that the handbook provisions did not create an employment contract. 110 Haw. at 532, 135 P.3d at 141. Under those circumstances, *Douglass* found that the plaintiff "was [not] informed of the existence of the arbitration provision, let alone that he would be bound by it." Thus, *Douglass* concluded that the unambiguous intent to submit to arbitration element was not met. *Id.* at 143, 135 P.3d at 534.

11

In *Siopes*, the court found that when enrolling in an employee health-care plan, the plaintiff-enrollee did not assent to an arbitration provision contained in a separate service agreement between the health plan and the employer union health benefits trust fund. 130 Haw. at 453, 312 P.3d at 885. In that case, to enroll in the health-care plan, the plaintiff completed an enrollment form that contained no reference to the service agreement or to an arbitration agreement. *Id.* at 452, 312 P.3d at 884. Nor did the enrollment form include a statement that a separate service agreement exists, or that the enrollee has read and understood the service agreement or any separate document affecting the enrollee's rights. *Id.* Rather, the enrollment form merely provided that the enrollee agreed to the terms and conditions of the selected health-care plan. *Id.*

Here, the record includes copies of the Policy, the signed Notice, and the signed 4-page Agreement from Denyer's personnel file as well as Kauther's declaration regarding SWSA's "uniform policy and practice" regarding the provision and storage of such documents in connection with new employees. Denyer's argument — that she was not aware of the existence of the arbitration policy, based solely on her assertion that she was not given copies of the Policy and pages 1-3 of the Agreement on March 7, 2016 — is insufficient to negate evidence of mutual assent on the face of the documents. *See Leong v. Kaiser Found. Hosps.*, 71 Haw. 240, 246, 788 P.2d 164, 168 (1990) (holding that in light

of affidavits attesting to the usual manner of distributing a booklet to employees containing notice and a summary of an arbitration provision in a separate health-care contract and averring that the routine was adhered to, plaintiffs' "averment that they did not receive the booklet" was insufficient to negate the existence of a binding arbitration provision in the contract).

Further, even if Denyer had only the Notice (which she signed)[2] and page 4 of the Agreement, those pages alone are sufficient to establish mutual assent. Unlike *Douglass* and *Siopes*, not only do the signature pages of both the Notice and the Agreement explicitly reference the arbitration agreement and Policy, they both include language verifying that by signing, Denyer attests that she agrees to the binding arbitration procedures. *See* Notice at 2, Agreement at 4. Denyer concedes that it is her signature on both the Notice and the Agreement. *See* Denyer Decl. ¶ 3. Under these circumstances, the court finds that the second element of mutual assent is satisfied.

### 3.      *Bilateral Consideration*

Under Hawaii law, bilateral consideration exists where there is mutual assent to arbitrate — that is, where the employer and employee both agree to "forego their respective rights to a judicial forum, given the delay and expense which results from the use of the federal and state court systems, in order to benefit

---

[2] During the hearing, Denyer conceded that she received and signed the two-page Notice.

from the resulting time and cost savings" of arbitration. *Brown*, 82 Haw. at 159-60, 921 P.2d at 239-40.

Here, both parties agreed to submit to binding arbitration and forego their respective rights to a judicial forum. Specifically, the Notice provides that "you and we agree that any employment dispute . . . will be submitted to binding arbitration[.]" Notice at 1. And the Agreement provides that "[t]he Company and I mutually consent to the resolution by arbitration of all claims . . . [and] both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action . . . in any way related to any claim covered by this Agreement." Agreement at 1. Because both parties agreed to accept binding arbitration and forego their respective rights to a judicial forum, the third element of bilateral consideration is met.

Based on the foregoing, SGWS has met its initial burden of establishing the existence of a valid arbitration agreement. The burden now shifts to Denyer to establish defenses to enforceability.

**B.     Defenses to Enforceability of the Arbitration Agreement**

Denyer contends that SGWS cannot enforce the arbitration agreement because (1) it is not a party to that agreement, and (2) the arbitration agreement is unconscionable. The court disagrees.

### 1. SGWS as successor to SWSA

Denyer contends that SGWS cannot compel arbitration because she was hired by SWSA. *See* Opp'n at 3 ("SGWS was not the company who hired Ms. Denyer."). During the hearing, Denyer clarified her position arguing that a successor corporation cannot enforce an arbitration agreement to which it was not a signatory. Denyer is mistaken.

The Hawaii Supreme Court has recognized that "a nonsignatory to an arbitration agreement may invoke the arbitration agreement against a signatory to that agreement under certain circumstances." *Luke v. Gentry Realty, Ltd.*, 105 Haw. 241, 247, 96 P.3d 261, 267 (2004). One such circumstance, for example, is that "[n]onsignatory successors . . . are entitled to compel arbitration under clauses signed by the corporations whose liability they are alleged to have assumed." *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*, 2016 WL 6082415, at *9 (N.D. Cal. Oct. 18, 2016) (quoting *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 991 (N.D. Cal. 1996)); *see also Jenks v. DLA Piper Rudnick Gray Cary I.S. LLP*, 196 Cal. Rptr. 3d 237, 244 & n.5 (Cal. Ct. App. 2015) (recognizing that following merger, nonsignatory corporation which assumed the rights and obligations of acquired corporation may enforce arbitration agreement against a signatory); *Marenco v. DirecTV LLC*, 183 Cal. Rptr. 3d 587, 596 (Cal. Ct. App. 2015) ("[Plaintiff's] continued employment with [successor employer] served as his

implied consent to preserving the original terms of employment, including the arbitration agreement.").

Here, there is no dispute that following a 2016 merger, SGWS "is the successor to [SWSA]." Kauther Decl. ¶ 3; Denyer Decl. ¶ 8. A merger generally results in the surviving entity having assumed "[a]ll debts, liabilities, obligations . . . rights, privileges, immunities, powers, and purposes" of "each entity that is a party to the merger[.]" Hawaii Revised Statutes § 428-906(a)(3), (5). And the Agreement itself provides that "any reference . . . to the Company will also refer to . . . all successors and assigns[.]" Agreement at 2. Thus, the court finds that SGWS assumed SWSA's rights and obligations under the arbitration agreement.

Denyer relies on *Santander v. Caris Med Surg, LLC*, 2017 WL 3784619 (Haw. Ct. App. Aug. 31, 2017), which is easily distinguishable. In that case, the court found that defendant employer Caris, with whom temporary work-placement agency Altres placed the plaintiff employee, failed to establish the existence of an arbitration agreement between it and the plaintiff. *Id.* at *2-3. Prior to her placement at Caris, the plaintiff and Altres entered into an agreement requiring plaintiff to "submit to binding arbitration any controversies concerning compensation, employment, or termination of employment . . . between myself and ALTRES, and/or between myself and the ALTRES customer . . . ." *Id.* at *2.

16

*Santander* found that Caris was not a party to the arbitration agreement between plaintiff and Altres for two reasons: (1) the agreement did not identify Caris as plaintiff's employer, but rather "specifically and exclusively reference[d] Altres's requirement for Altres employees"; and (2) the agreement's "reference to an Altres customer" did not unambiguously mean Caris because the plaintiff "was not hired by Caris until months later." *Id.* at *2. *Santander* also found that the arbitration agreement lacked bilateral consideration — the agreement "requires [plaintiff] to submit to binding arbitration, but does not impose that requirement on Altres, or indicate that Altres's customers have mutually agreed to submit to binding arbitration." 2017 WL 3784619, at *2.

Here, unlike *Santander*, SGWS established the existence of a valid arbitration agreement, and the Agreement specifically and unambiguously provides that it applies to SWSA's successors. Additionally, unlike *Santander*, the arbitration agreement has bilateral consideration. And *Santander* does not address enforcement of a valid arbitration agreement by a successor corporation. In short, by succeeding SWSA and assuming SWSA's rights and obligations, SGWS is entitled to enforce the arbitration agreement between Denyer and SWSA. *See, e.g.*, *Levi Strauss & Co.*, 2016 WL 6082415, at *9.

///

///

## 2.     *Unconscionability*

Arbitration agreements may be "invalidated by generally applicable contract defenses." *AT&T Mobility LLC*, 563 U.S. at 339.  And courts look to state-law principles governing the formation of contracts when determining the applicability of a defense to the enforcement of an arbitration agreement. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *Siopes*, 130 Haw. at 447 n.14, 312 P.3d at 879 n.14.

Hawaii courts recognize unconscionability as a defense to enforcement of an arbitration agreement. *Gabriel v. Island Pac. Acad.*, *Inc.*, 140 Haw. 325, 336-37, 400 P.3d 526, 537-38 (2017); *Siopes*, 130 Haw. at 459, 312 P.3d at 891.  "Unconscionability encompasses two principles: one-sidedness (substantive unconscionability) and unfair surprise (procedural unconscionability)." *Gabriel*, 140 Haw. at 337, 400 P.3d at 538 (citing *Balogh v. Balogh*, 134 Haw. 29, 41, 332 P.3d 631, 643 (2014)).  "'Generally, a determination of unconscionability requires  showing that the contract was both procedurally and substantively unconscionable when made,' but an impermissibly one-sided contract can be unconscionable and unenforceable without a showing of unfair surprise." *Id.* (quoting *Balogh*, 134 Haw. at 41, 332 P.3d at 643.

### a. Procedural unconscionability

"Procedural unconscionability . . . focuses on the process by which the allegedly offensive terms found their way into the agreement." *Narayan v. The Ritz-Carlton Dev. Co., Inc.*, 140 Haw. 343, 351, 400 P.3d 544, 552 (quoting Joseph M. Perillo, 7 *Corbin on Contracts* § 29.1 (Rev. ed. 2002)). Factors for a court to consider when determining procedural unconscionability include "whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power between the parties." *Id.* (quotation marks and citation omitted).

Denyer argues that the arbitration agreement is procedurally unconscionable because (1) she did not receive the Policy and pages 1-3 of the Agreement when she signed page 4 of the Agreement, and (2) she was hired by SWSA, not SGWS, and therefore does not know "if the documents provided are actually those used to hire me"). Opp'n at ¶¶ 1, 3, 4; Denyer Decl. ¶¶ 3, 4, 7, 8, 9. The court disagrees.

### i. Provision of documents

Although the record includes evidence that Denyer did receive copies of the Policy and complete Agreement, *see* Kauther Decl. ¶¶ 4-9; Notice at 1 (providing that the "Policy is attached to this letter"), even if Denyer did not

receive these documents, she was notified of their existence and provided an opportunity to review them. The Notice provides that (1) all of SWSA's employment "policies are available in the Human Resources Department should you desire to review them prior to your acceptance of employment," (2) "[i]f you have any questions . . . please ask [SWSA] and/or consult with your own counsel," and (3) "[SWSA] ask[s] that you read the . . . Policy" before signing the "Agreement[.]" Notice at 1-2. Further, by signing the Notice, Denyer "attest[ed] that [she] read and understood this document[.]" *Id.* at 2. And the signature page of the Agreement (the page which Denyer admits that she received and signed) includes Denyer's acknowledgement that she "READ THIS AGREEMENT (AND THE POLICY INCORPORATED HEREIN) . . . [AND WAS] GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO." Agreement at 4.

Thus, at the very least, prior to signing the Notice and Agreement, Denyer was informed of the existence of the Policy and Agreement and of her ability to review those documents with the Human Resources Department and/or her own counsel before accepting employment with SWSA. There is no evidence that SWSA employed deceptive or high-pressured tactics or hid the documents through the use of fine print. Under these circumstances, Denyer has failed to

establish unfair surprise, or procedural unconscionability. *Cf. Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013) (finding "the failure to attach the AAA rules . . . is insufficient grounds to support a finding of procedural unconscionability"). But even if this were sufficient to establish procedural unconscionability, the failure to attach such documents "would only render the agreement unenforceable if [the arbitration policy was] substantially unconscionable." *Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1131 (C.D. Cal. 2006). And as discussed below, Denyer fails to establish that the Policy and Agreement are substantively unconscionable.

ii.     Authenticity of the documents

In her declaration, Denyer suggests that because she was hired by SWSA, not SGWS, Petitioner may not have produced the actual documents from her hiring. *See* Denyer Decl. ¶ 8 ("I don't know if the documents provided are actually those used to hire me.").

But in her position as Senior Director, Labor and Employment Counsel for SGWS, Kauther has "regular access to and [has] reviewed personnel files for former and current employees of SWSA." Kauther Decl. ¶¶ 1, 3, 6. And Kauther states that the Policy, Notice, and Agreement produced by SGWS came from Denyer's personnel file that was kept and maintained in the normal course of business. *Id.* ¶¶ 7, 8.

During the hearing, Denyer conceded that she signed the Notice and page 4 of the Agreement, and that the documents produced are copies of the ones she signed upon being hired by SWSA. Thus, to the extent Denyer seeks to establish unfair surprise or procedural unconscionability on this basis, she fails.

   *b. Substantive unconscionability*

   "Substantive unconscionability . . . focuses on the content of the agreement and whether the terms are one-sided, oppressive, or unjustly disproportionate." *Narayan*, 140 Haw. at 351, 400 P.3d at 552 (quoting *Balogh*, 134 Haw. at 41, 332 P.3d at 643). That is, a contract is substantively unconscionable where it "is the result of coercive bargaining between parties of unequal bargaining strength" and "unfairly limits the obligations and liabilities of, or otherwise unfairly advantages, the stronger party." *Brown*, 82 Haw. at 247, 921 P.2d at 167.

   Denyer contends that the arbitration agreement is substantively unconscionable because (1) she did not receive copies of the Policy and pages 1-3 of the Agreement, and (2) she cannot afford to travel to the mainland to participate in arbitration. *See* Opp'n ¶ 1; Denyer Decl. ¶¶ 3-7, 9. Denyer's arguments are without merit.

   First, to the extent Denyer contends that SWSA's failure to provide the Policy and complete Agreement constitute "coercive bargaining between

parties of unequal bargaining strength," that alone is insufficient to establish substantive unconscionability. *See Brown*, 82 Haw. at 247, 921 P.2d at 167 (explaining that substantive unconscionability also requires that the "contract unfairly limit[] the obligations and liabilities of, or otherwise unfairly advantage[], the stronger party"). Denyer does not explain how the Policy, Agreement, or Notice unfairly advantages or limits SGWS' obligations or liability. Thus, Denyer fails to establish substantive unconscionability based solely on SWSA's alleged failure to provide the documents when Denyer was hired.

Second, Denyer appears to contend that the arbitration agreement unfairly requires her to incur expenses that she cannot afford in order to participate in arbitration. *See* Denyer Decl. ¶ 5 ("I cannot afford to travel around the country, including to San Francisco, California, to go through AAA arbitration."). Denyer does not provide any estimate of the expected arbitration costs or of her financial circumstances. The Policy, however, provides that SGWS "shall pay 100 percent in excess of one hundred dollars ($100) of the administrative fee required. The remaining $100 is to be paid by the complaining party." Policy at 6-7.

The Hawaii Supreme Court recently declined to hold a cost-splitting requirement in an arbitration agreement to be "per se unconscionable." *Gabriel*, 140 Haw. at 337, 400 P.3d at 538. There, it found that requiring "a terminated school teacher to pay, up-front a deposit amounting to one-quarter to one-third of

her former annual salary in order to access the arbitral forum" was substantively unconscionable. *Id.* at 337-38, 400 P.3d at 538-39 (emphasis omitted).

Here, the arbitration agreement requires Denyer to pay no more than $100 toward the administrative costs of arbitration and obligates SGWS to pay all fees above $100. Policy at 6-7. The Policy further provides that "[i]f the parties disagree as to the locale, the AAA may initially determine the place of arbitration . . . having regard for the contentions of the parties and the circumstances of the arbitration." *Id.* at 9. Denyer does not allege that a site for arbitration has been chosen, let alone whether that site is outside of Hawaii. During the hearing, SGWS stated that an arbitrator from San Francisco has been chosen, but that no decision has been made regarding the site for the arbitration. And finally, Denyer does not provide any facts from which the court could determine that requiring her to pay $100 in administrative fees would be unconscionable. Thus, Denyer fails to establish substantive unconscionability based on cost.

In sum, the court finds that Denyer fails to establish a meritorious defense to the enforceability of the arbitration agreement.

## C.     The Arbitration Agreement Encompasses Denyer's Claims

Denyer does not dispute that the arbitration agreement encompasses her claims. She did not oppose SGWS's Petition on that point, and she conceded as much during the hearing. The court agrees.

24

The Agreement expressly provides that the parties agree to arbitrate "all claims" between them "whether or not arising out of [Denyer's] employment, or its termination."  Agreement at 1.  Denyer's draft Complaint includes claims for whistleblower retaliation; violation of wage and hour laws; hostile, intimidating, and abusive work environment; wrongful constructive termination of employment; interference with compensation, terms, conditions, and privileges of employment; conspiracy, fraud, and retaliation in violation of employment laws; intentional interference with the economic advantages of employment; and work-related infliction of emotional distress.  *See* ECF No. 2-4 ¶¶ 11-20.  All of these claims arise from Denyer's employment and/or termination of employment by Petitioner and are therefore encompassed by the Agreement.

Based on the foregoing, the court finds that the arbitration agreement is valid, that it encompasses Denyer's claims, and that Denyer has not raised any meritorious defense to enforcement of the arbitration agreement.

*///*

*///*

*///*

*///*

*///*

*///*

# V. **CONCLUSION**

The Motion to Compel Arbitration is GRANTED.  The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 15, 2017.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Denyer v. S. Glazer's Wine & Spirits, LLC*, Civ. No. 17-00407 JMS-RLP, Order Granting Petition to Compel Arbitration